UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| United States of America, | Case No. 2:23-cr-00055-CDS-DJA |
|---|---|
| Plaintiff | **Order to Show Cause against Attorney Mark Krotoski, Esq., and Trial Co-Counsel** |
| v. | |
| Eduardo "Edward" Lopez, | |
| Defendant | |

On April 14, 2025, counsel for defendant Eduardo "Edward" Lopez filed his fourth motion for mistrial. Mot., ECF No. 654. Therein, counsel makes argument that the government violated a court order to redact attorneys' names and introduced the unredacted document, then bootstraps that accusation to other arguments he claims warrant a mistrial. *See id.* at 10–14. The representation that the unredacted version was introduced during the trial is belied by the record. Based on that misrepresentation, together with other conduct set forth herein, the court issues this show cause order against Mark Krotoski, Esq., and other trial co-counsel for Lopez.

**I.    Legal authority**

In the federal system, "each district court is authorized to govern and discipline its own bar." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999). Under its inherent authority, a district court may issue sanctions for a variety of reasons, including violating its local rules. *See Fink v. Gomez*, 239 F.3d 989, 991–92 (9th Cir. 2001); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989). Before imposing sanctions on an attorney, however, the court must provide the attorney with notice and an opportunity to be heard. *Weissman*, 179 F.3d at 1198. A separate sanctions hearing is not required when the attorney is given the opportunity to respond in writing. *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). "The opportunity to brief the issue fully satisfies due process requirements." *Id.* (citing *Resolution Tr.*

1  *Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995); *Toombs v. Leone*, 777 F.2d 465, 472 (9th Cir. 1985)).

This District's Local Rules provide that "[a]n attorney admitted to practice under any of these rules must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as these standards may be modified by this court." LR IA 11-7(a). As relevant here, Rule 3.3 of the Nevada Rules of Professional Conduct states that "[a] lawyer shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Further, "[a]n attorney who violates these standards of conduct, or who fails to comply with this court's rules or orders, may be disbarred, suspended from practice before this court for a definite time, reprimanded, or subjected to other discipline as the court deems proper." *Id.* The local rules also require that when ordered to meet and confer, the parties are to communicate directly and "in good faith." LR IA 1-3(f).

## II.   Discussion

It is a rare occasion when this court observes repeat and purposeful unprofessional misrepresentations to the court and opposing counsel. Yet, this is precisely how attorney Mark Krotoski, one of Lopez's trial counsel, conducted himself in this case. The misrepresentations, a failure to timely comply with a meet and confer order, an unsupported claim that an unredacted version of an exhibit was shown to the jury in a motion for mistrial, together with omitting information from Lopez's motion for a new trial regarding why an expert was stricken, and other conduct, necessitates this show cause order.

As background, the court started a mid-trial *Daubert* hearing involving proposed defense expert witness Suzanne Stuckwisch on Friday, April 4, 2025. After Stuckwisch provided some testimony during the hearing, the *Daubert* hearing was continued to Monday, April 7, 2025 because Lopez failed to comply with this court's order to have the expert meet and discuss some

reports produced using a program called Tableau and what data (or subset of data) was used to create certain charts and results from that data. *See generally* Trial tr. 4/4/25 A.M., ECF No. 627 at 56–61. The court ordered the parties to meet and confer to try and resolve some of the disagreements about what had and had not been disclosed by Stuckwisch, as well as outstanding questions about how certain conclusions were reached and upon which data those conclusions were based. The parties engaged in some discussion after the trial day on Friday, April 4, but they agreed that time was needed to try and resolve some outstanding issues. *See generally* Trial tr., 4/4/25 P.M., ECF No. 628 at 72–78. On Sunday, April 6, 2025, the government filed a status report about the efforts to meet and confer. Status report, ECF No. 630. In that report, the government advised it had emailed defense counsel on Saturday, April 5, 2025, asking when they could meet and confer to address the outstanding issues with the proposed expert. *Id.* at 2. The parties met at 3:45 p.m., during which Krotoski represented he would get in contact with the Stuckwisch and get back to the government. At 7:53 p.m. that evening, Krotoski sent an email to the government that stated, in relevant part, that the expert witness "**has been traveling today and was unreachable**" and that the defense "needed to sort an important work product issue." ECF No. 630-2 (emphasis added). Krotoski finally provided the required disclosure on Sunday, April 6, 2025, at 8:13 a.m. ECF No. 630-3.

   The court resumed the *Daubert* hearing the morning of Monday, April 7, 2025. Given the information in the status report, the court had questions regarding the witness's alleged unavailability due to travel given she was due to be back in Las Vegas for the continuation of the *Daubert* hearing on Monday morning. The witness took the stand and clarified that she traveled back from Las Vegas to California on Friday evening and that she spent her Saturday running errands and getting her mammogram—not traveling. Trial tr. 4/7/25 A.M. ECF No. 638 at 20–22. The extent of her "traveling" was in a vehicle for the purpose of running errands and to get her mammogram. Stated otherwise, Krotoski's representation that the witness was "traveling" was a lie.

As a result of the blatant misrepresentation that the expert was "traveling," I found that counsel's actions were unacceptable and demonstrative of bad faith. *Id.* at 23. I also addressed the untimeliness of the required disclosure of the expert's materials under Rule 16. *Id.* at 23–23. After conducting an analysis under Rule 16, I struck the witness, and she was not allowed to testify. *Id.* As noted when it struck the proposed expert witness, the court consistently gives everyone the benefit of the doubt because the court understands trials can be stressful and busy, among several other adjectives. *See generally* Trial. tr. 4/7/25 A.M., ECF No. 638 at 23. This is because the court believes in giving everyone grace. At that time, the court felt striking the witness was a sufficient sanction under Rule 16, even in light of the blatant lie about the expert witness's alleged unavailability, together with lack of timely discovery disclosures from the expert witness. The lie about the witness's unavailability was exacerbated by other unprofessional trial conduct from Krotoski, such as delaying the proceedings by lackadaisically retrieving witnesses and not providing direct answers to direct questions in the days leading up to his misrepresentation regarding Stuckwisch.[1] *See* ECF No. 638 at 22–23 (discussing other purposeful delays caused by Krotoski). To date, Krotoski has never attempted to correct, or even explain, his lie. Ultimately, this court's grace evaporates in the face of lies, misrepresentations, and omissions.

Indeed, not only has Krotoski failed to correct the record, but he also attempts to muddy the proverbial waters regarding the reasons Stuckwisch was stricken. In his Rule 33 motion, one argument Lopez advances in support of his request for a new trial was the court's decision to strike Stuckwisch. Mot. for new trial, ECF No. 666. The motion argues that "[t]he Court took

---

[1] Even despite this admonishment, defense counsel persisted in exhibiting unprofessional conduct and gamesmanship. On April 8, 2025, two weeks after the trial commenced, Lopez's counsel filed an amended exhibit list that ballooned from 17 pages long to 158 pages long. *Contrast* Original list, ECF No. 543, *with* Am. list, ECF No. 640; *see also* Trial tr. 4/10/24 P.M., ECF No. 649 at 69–70 (discussing ballooned exhibit list on the record). And although not grounds for a show cause order but rather an example of lack of courtesy, Krotoski made a pre-trial request that the court go dark on April 11 because he was set to argue before the Ninth Circuit, but did not advise the court until April 7, 2025, that this dark day was no longer needed. By the time the court learned this information, it was too late to ask the jury to anticipate coming to court on the April 11. *See* Trial tr., 4/7/25 P.M., ECF No. 639 at 111.

4

the drastic step of excluding the testimony of expert economist Sue Stuckwisch in its entirety, discontinued the *Daubert* hearing and failed to satisfy specific steps required by the Supreme Court and Ninth Circuit before imposing the drastic exclusion sanction." *Id.* at 12 (citing ECF No. 638, at 22:17–24:16). Completely absent from the motion for a new trial is an acknowledgment or discussion regarding what led to Stuckwisch being stricken. Instead, Krotoski[2] contends that "the economist was unexpectedly unavailable for most of Saturday and had not disclosed her schedule including her mammogram appointment, the drastic remedy of exclusion was unwarranted when additional time was available and could have been provided or other options could have been considered." ECF No. 666 at 17. As written, the motion represents that the court struck Stuckwisch based on some sort of "misunderstanding," as opposed to Krotoski's misrepresentations about Stuckwisch's unavailability rather than his own failure to ensure she was available so he could comply with the court's order to meet and confer.

Worse still, Krotoski included a declaration from Stuckwisch as part of the motion for a new trial attempting to shift the blame for Krotoski's misrepresentation to Stuckwisch. Her declaration states:

> I did not inform Mr. Krotoski of my weekend schedule including a previously set medical appointment. It was not until approximately 4pm that I was able to check my messages at which time I had several emails and voicemail messages from Mr. Krotoski. At 4:05pm, Mr. Krotoski and I spoke on the phone, and it was the first time we spoke all day.

Def.'s Ex. B, ECF No. 666-3 at 5, ¶ 15. This does not explain away Krotoski's lie. Rather, it confirms that Krotoski had no intention of following the court's meet and confer order issued on Friday, April 4, 2025. The parties were required to meet and confer to try to resolve the questions regarding Stuckwisch's data and results before the *Daubert* hearing resumed the following Monday morning. To comply with that order, Krotoski would have had to learn

---

[2] Of Lopez's trial counsel and signatories to the new trial motion, on Krotoski attaches a declaration in support of the motion. *See* ECF No. 666-1.

Stuckwisch's availability for the weekend. But he never bothered to ask about her availability to ensure compliance and has now twice misrepresented the reasons for her lack of availability.[3]

Krotoski again engaged in an unacceptable misrepresentation in his fourth motion for mistrial (ECF No. 654), wherein he argues an unredacted version of exhibit 151 was admitted and shown to the jury. *See* Mot., ECF No. 654 at 10–14 (arguing that the government violated Lopez's Fifth and Sixth Amendment rights, as well as allegedly violating the court's order to redact the names of attorneys). Government's exhibit 151 was a list of attorneys Lopez emailed to himself and his assistant that was turned over to a third-party during the due diligence phase of the sale of Lopez's company. He then bootstrapped that argument to allege that the government engaged in further misconduct.

The argument that the unredacted exhibit was entered into evidence is directly contradicted by the record. Rather, on Friday, March 28, 2025, the court took the government's request to admit that exhibit under advisement and considered it over the weekend. *See* Trial tr. 3/28/25 P.M., ECF No. 600 at 96. Then, on Monday, March 31, 2025, the court addressed the admission of the **redacted version** of exhibit 151 with counsel, outside the presence of the jury. *See* Trial tr. 3/31/25 A.M., ECF No. 605 at 9–13. Indeed, during that interaction, the court specifically discussed that the attorneys' names were redacted. *Id.* at 11. In the end, I ruled exhibit **151-R** was admissible. *Id.* at 13. The government then moved exhibit 151-R into evidence through SSA Singh. *Id.* at 18–19; *see also* Gov't final ex. list, ECF No. 658 at 17 (identifying exhibit 151-R). In fact, Lopez even recognized that the **redacted** version of the exhibit was introduced and shown to SSA Singh in a previous filing. *See* Mot. for mistrial, ECF No. 609 at 10 (noting "the Government presented 151-R to Agent Singh").

Despite this clear record that the redacted version was admitted, Krotoski attached the **unredacted version** to his fourth motion for a mistrial. *See* Mot., ECF No. 654 at 6 (citing Ex.

---

[3] First to the Government ("traveling") and then in the motion for a new trial (unexpectedly unavailable"). One cannot be "unexpectedly" unavailable if their availability is not known to begin with.

6

151); Def.'s Ex. D, ECF No. 654-4 (attaching the unredacted version of Ex. 151). Although Krotoski does acknowledge that the court ordered the attorney names redacted from that and other exhibits,[4] he still uses the unredacted version as further support of his motion for mistrial and wholly fails to acknowledge that the record clearly reflects that only the redacted version was admitted.

There are other troubling arguments in the motion for mistrial.[5] In another section, Krotoski adds information into citations to the trial transcript utilizing brackets that are not in the actual transcript. Krotoski argues that during closing argument, counsel for the government turned and pointed at stating him stating:

> You got to be able to move job to job. Lawyers do it. [Pointing directly to defense counsel Mr. Krotoski] I, frankly, made more money per hour than you do as a government lawyer. I should have, frankly, stuck with that. You got to be able to move. That's the essence of the antitrust.

ECF No. 654 at 9. Krotoski cites "Trial Transcript, at 194:17-21 (April 9, 2015)." *Id.* The bracketed section is not in the trial transcript and Krotoski, nor any of Lopez's other attorneys, lodged an objection or made any other record of any such gesturing, making this argument not only misleading, but entirely unsupported by the record.

There is a line between zealous advocacy and unreasonable conduct by counsel that violates the rules of the court and professional responsibility. *See Elem Indian Colony of Pomo Indians v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1150–51 (N.D. Cal. 2017) ("[P]laintiff's unreasonable conduct, including misrepresentations and misleading statements to the Court, makes this action exceptional."). The record here shows Krotoski crossed that line on more than one occasion, warranting this show cause order.

---

[4] *See* ECF No. 654 at 7 (citing order requiring redactions of attorney names, ECF No. 546).

[5] These arguments do not form the basis for this show cause order but are included to provide context to overall unprofessionalism exhibited by Krotoski.

In his biography,[6] Krotoski identifies himself as "an accomplished litigator" and former DOJ leader and prosecutor, who previously clerked for both a Ninth Circuit and U.S. District Judge. Simply put, Krotoski knows better. His arguments about exhibit 151-R, which are belied by the record; his failure to address or acknowledge why Stuckwisch was stricken; and his inclusion of unsupported allegations like being pointed at during rebuttal argument, demonstrate a lack of candor and bad faith, especially when evaluated in conjunction with the other unprofessional conduct during the trial.[7]

Consequently, Mark Krotoski is hereby ordered to show cause why he should not be sanctioned for violating Local Rule IA 11-7(a), Nevada Rule of Professional Conduct 3.3, and its analogue rules in the District of Columbia and California[8] where he is barred; for his arguments about exhibit 151-R in Lopez's fourth motion for mistrial; his failure to meet and confer in good faith as ordered on April 4, 2025, regarding the later-stricken expert witness; his lie to the government regarding that witness's alleged unavailability; and his lack of candor in the Rule 33 motion regarding the reason proposed expert witness Suzanne Stuckwisch was stricken. Krotoski must show cause, in writing, no later than July 3, 2025.

The motion for mistrial (ECF No. 654) reads as if Krotoski wrote the motion, as the motion takes issue with the government allegedly pointing at him during rebuttal argument, and Krotoski's is the only submitted declaration that accompanies the motion. But trial co-counsel signatures are also affixed to both motions. Consequently, co-counsel[9] Richard Donoghue, Esq., Samuel Braveman, Esq., and Paola Armeni, Esq., must show cause in writing why they should not be sanctioned for submitting the motion for mistrial that contains material

---

[6] *See* https://www.pillsburylaw.com/en/lawyers/mark-krotoski.html (last accessed April 25, 2025).

[7] A recent status hearing regarding a request to reschedule Lopez's sentencing date suggests his unprofessionalism continues. Although not directly stated by either Lopez's new counsel or the government, the court understands Lopez's new counsel is having challenges obtaining discovery from Krotoski.

[8] D.C. and California's analogue rules are Rule 3.3(a)(1).

[9] The court does not attribute Krotoski's obstructionist behavior and unprofessionalism during the trial to co-counsel at this time.

misrepresentations of fact, and the Rule 33 motion that is misleading by omission, by July 3, 2025, applying this District's local rules, the Nevada Rules of Professional Conduct, and the Rules of Professional Conduct for any other jurisdiction in which they are barred.

### III. Conclusion

IT IS HEREBY ORDERED that Mark Krotoski, Esq., must show cause why he should not be sanctioned for violating Local Rule IA 11-7(a), Nevada Rule of Professional Conduct 3.3, and its analogue rules in the District of Columbia and California, in writing, by July 3, 2025.

IT IS FURTHER ORDERED that Richard Donoghue, Esq., Samuel Braveman, Esq., and Paola Armeni, Esq., must show cause in writing why they should not be sanctioned for violating Local Rule IA 11-7(a), Nevada Rule of Professional Conduct 3.3, applying the analogue rule to Nevada's Rules of Professional Responsibility Rule 3.3 for each of each jurisdiction where they are barred by July 3, 2025.

Dated: June 17, 2025

_____
Cristina D. Silva
United States District Judge