# EXHIBIT "C"

# EXHIBIT "C"

**DECLARATION OF SUZANNE M. STUCKWISCH**

I, Suzanne M. Stuckwisch, hereby declare and state as follows:

1. I am a Managing Director at Alvarez & Marsal Disputes and Investigations, LLC ("A&M"), a global professional services organization specializing in, among other things, the application of economics, statistics, and valuation principles to questions that arise in the context of litigation. My experience includes analyzing the labor market for nurses including home health and private duty nurses.

2. My prior Declaration dated April 28, 2025, summarized my engagement as an expert in economics for *United States of America vs. Eduardo Ruben Lopez*, and my meeting on April 4, 2025, between the government's expert, Ms. Grinberg and me. [ECF No. 666-2]

3. In this Declaration, I wish to provide additional information to provide certain facts of which I am aware in order to clarify related issues raised in the Court's Order to Show Cause. [ECF No. 693]

4. In my meeting with Ms. Grinberg, we did not agree on a time at which further information would be provided over the weekend, as I explained to Ms. Grinberg that I would share certain issues raised regarding the request with Defense counsel who would need to address and respond.

5. Prior to leaving the courthouse on Friday, April 4, 2025, I provided Mr. Krotoski with a brief, high-level oral overview of my meeting with Ms. Grinberg in which I described the four areas probed by Ms. Grinberg and her follow-on requests. Mr. Krotoski and I agreed that we would discuss further on Saturday April 5, 2025.

6. During our meeting on Friday, April 4, 2025, Mr. Krotoski asked for written information from my meeting with Ms. Grinberg so he could have a better understanding of the meeting and issues raised. Mr. Krotoski did not provide a deadline for me to send him the written

1

information, and I was not informed on Friday, April 4, 2025, of any meeting that may have been set for the defense to meet with government counsel regarding my meeting with Ms. Grinberg. I planned to provide the written information to Mr. Krotoski on Saturday.

7. On Friday, April 4, 2025, I did not inform, and Mr. Krotoski did not ask, about my weekend schedule, which included a previously scheduled medical appointment on Saturday, April 5, 2025. I understood that we would discuss next steps some time on Saturday, April 5, 2025; however, Mr. Krotoski and I did not set a specific time to discuss on Saturday, April 5. After my brief meeting with Mr. Krotoski at the courthouse, I departed for the Las Vegas Harry Reid International Airport. I arrived in San Francisco, California around 11 p.m. and at my residence around 11:30 p.m.

8. On Saturday, April 5, 2025, in the early afternoon I attended a previously scheduled medical appointment for a mammogram. I left my cell phone in the changing room of the medical facility during my medical appointment.

9. On or around the time of my medical appointment on Saturday, April 5, 2025, Mr. Krotoski left several messages for me by email, on my cell phone, and by text. The messages included emails at 11:46 a.m., 12:40 p.m., and 3 p.m.; telephone calls at 2:30 p.m. (left voicemail), 2:58 p.m., 3:12 p.m. (left voicemail); and text messages at 3:15 p.m., and 3:55 p.m.

10. On Saturday, April 5, 2025, at 3:56 p.m., I texted Mr. Krotoski for the first time, responding that I had just seen his messages and I was trying to find a place to call him back as I was leaving my medical appointment.

11. On Saturday, April 5, 2025, at 4:05 p.m., I spoke with Mr. Krotoski for the first time that day. Our call was brief, and we agreed that my A&M colleague and I would review the data files on the computer server as quickly as possible and that I would call Mr. Krotoski back. I did not provide details to Mr. Krotoski on where I had been during the day other than I was in San Francisco.

12. Mr. Krotoski called me at 5:47 p.m. and then texted me at 5:47 p.m. At that time, I was reviewing and/or otherwise working on the data files.

13. After I had reviewed the data files, Mr. Krotoski and I spoke for the second time on Saturday, April 5, 2025, at 6:44 p.m. We discussed the data files that were requested by the government's expert and any potential work product issues.

14. At about 7:32 p.m. for about 10 minutes, I spoke with Mr. Krotoski and co-trial counsel Sam Braverman at which time it was agreed that we should send the files as soon as possible.

15. I had further emails and calls from Mr. Krotoski on Saturday, April 5, 2025, including emails at 7:01 p.m., 8:30 p.m., a meeting at 9:30 p.m., and a text message at 10:36 p.m. asking me to send the files to Mr. Krotoski.

16. Because the data files were not created by my team or I, we had to locate the files on the computer server and ensure they were the correct files. This took some time. Once we identified the correct files, we had issues with the size of the files as they were too large to send via email. Due to the large size of the files, my first email was undeliverable. I then separated the files into two emails which were sent to Mr. Krotoski at about 10:51 p.m. and 10:52 p.m.

17. The only files my team and I had in our possession were the excel files that contained the manually entered data from the PDFs of wage data. I did not have, and therefore could not provide, the script used to scrape certain data from PDF files used in the excel files.

18. On the morning of Monday, April 7, 2025, before trial resumed, I informed Mr. Krotoski that I had a previously scheduled medical appointment on Saturday, April 5, 2025.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

July 16, 2025

*Suzanne M. Stuckwisch*
Suzanne M. Stuckwisch

3